UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 1:14-22607-CIV-MORENO

ALMANY INVESTORS, LTD.,

      Plaintiff,

vs.

NEXTEL SOUTH CORP.,

      Defendant.

_____/

## ORDER GRANTING NEXTEL'S MOTION FOR SUMMARY JUDGMENT IN PART

THIS CAUSE is for the breach of a Communication Site Lease Agreement between Almany Investors, Ltd. (Almany) and Nextel South Corp. (Nextel), by which Nextel operated a cellular communication service on Almany's Premises. The Agreement automatically renewed for successive five year terms, but contained an early termination provision that allowed Nextel to terminate the contract on thirty-days' notice if Nextel "determines that the Premises are not appropriate for its operations for economic or technological reasons." D.E. 1-2, Exhibit A (the Agreement). In December 2013, Nextel notified Almany that it intended to terminate the lease "effective July 21, 2014, or the date Nextel vacates the site, whichever first occurs." *See* D.E. 1-2, Exhibit D. Nextel vacated the Premises on May 15, 2014, and Nextel sent a final termination notice sent on May 23, 2014. *See* Plaintiff's SUMF at ¶13; D.E. 15-1 at ¶6 (Affidavit of Lozano Milton). Almany sued Nextel for breach of contract in June, 2014, and Nextel now moves for summary judgment on the basis that it terminated the lease in accordance with express terms of the Agreement.

Almany believes that two material issues of disputed fact preclude summary judgment. First, Almany disputes whether the requisite economic or technological conditions existed to justify Nextel's decision to terminate the Agreement on thirty-days' notice. Second, Almany believes that—by virtue of the duty of good faith—Nextel had an obligation to notify Almany of the changed conditions as soon as Nextel determined that the Premises were no longer economically or technologically viable, and that by failing to do so, Nextel waived its right to terminate the Agreement.

THE COURT has considered Nextel's motion for summary judgment and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **GRANTED IN PART**. Almany signed an agreement giving Nextel substantial discretion to act in its economic best interests, and there are no disputed facts that could entitle Almany to recover for Nextel's decision to do so. Nextel complied with the express terms of the termination clause, and there is no evidence that acted in bad faith. As such, the Court holds that Nextel was permitted to terminate the lease upon thirty-days' written notice. At this time, the Court cannot reach the remaining issue of when Nextel provided written notice that was adequate to commence the thirty-day termination period.

## I.    FACTS

In 1998, Almany agreed to lease Nextel about 300 square feet on the rooftop of Almany's building so that Nextel could construct and operate a cellular communication system. *See* D.E. 15 at 2. The Agreement between the Parties contained an initial five-year lease term, which automatically renewed for successive five-year terms unless Nextel notified Almany of its

intention to terminate the lease in accordance with the Agreement's termination clause. *Id.* The termination clause provides that:

> This Agreement may be terminated without further liability on thirty (30) days prior written notice as follows:
>
> (i) by either party upon a default of any covenant or term hereof by the other party, which default is not cured within sixty (60) days of receipt of written notice or default, provided that the grace period for any monetary default is ten (10) days from receipt of notice; or (ii) by Lessee for any reason or for no reason, provided Lessee delivers written notice of early termination to Lessor no later than thirty (30) days prior to the Commencement Date; or (iii) by Lessee if it does not obtain or maintain any license, permit or other approval necessary for the construction and operation of Lessee Facilities; or (iv) by Lessee if Lessee is unable to occupy and utilize the Premises due to an action of the FCC, including without limitation, a take back of channels or change in frequencies; *or (v) by Lessee if Lessee determines that the Premises are not appropriate for its operations for economic or technological reasons, including, without limitation, signal interference.*

*See* D.E. 1-2, Ex. A, Section 10 (emphasis added).   The latest automatic renewal term commenced on June 15, 2013, and was scheduled to run through June 14, 2018. *See* Plaintiff's SUMF at ¶27.

Nextel used the Premises to house an iDEN network cell cite. *See* Divornis Affidavit at ¶15.[1] On June 30, 2013, Nextel shut down its iDEN network nationwide. *See id.* at ¶14. According to Ms. Divornis, the iDEN network was not suitable for the deployment of Nextel's new technology. *See id.* at ¶14.

On December 30, 2013, Nextel sent a termination letter to Almany that stated:

---

[1] Violeta Dirvonis is a real estate manager in Nextel's National Site Development Operations unit. Ms. Divornis's responsibilities include: "addressing and handling matters concerning real estate related aspects of Sprint and Nextel branded wireless network facilities." *See* D.E. 11, Exhibit A at ¶3 (Divornis Affidavit). Ms. Divornis has personal knowledge of the equipment that was operated at the Premises, and she is familiar with the cell technology used nationwide. *See* Divornis Deposition at ¶¶ 9–12. She did not, however, participate in Nextel's particular decision to stop using the Premises in this case. *See id.*

> Pursuant to Section 10(v) of the above-referenced Agreement, this letter will serve as notice that Nextel is exercising its right to terminate the Agreement, effective July 21, 2014, or the date Nextel vacates the site, whichever first occurs ("Termination Date").  In no event will the Termination Date be less than thirty (30) days after the date of this letter.

D.E. 1-2, Exhibit D.  On January 22, 2014, Almany rejected Nextel's "attempt to terminate the lease" because "[t]he provision [Nextel] relied upon to terminate the lease is not applicable." D.E. 1-2, Ex. E.  Nextel ultimately vacated the Premises on May 15, 2014, and Nextel sent a final termination notice sent on May 23, 2014.   *See* Plaintiff's SUMF at ¶13; Affidavit of Lozano Milton at ¶6.

## II.     Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is material if it "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For the purpose of the instant motion, the Court "resolve[s] all ambiguities and draw[s] reasonable factual inferences from the evidence in the non-movant's favor." *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).

## III.    Discussion

###    A.    *Economic and Technological Conditions Justify Nextel's Decision to Terminate the Lease.*

The express terms of the Agreement permit Nextel to terminate the lease on thirty-days' written notice "if [Nextel] determines that the Premises are not appropriate for its operations for economic or technological reasons."  Almany does not dispute that Nextel used the Premises to

4

operate its iDEN network, or that Nextel shut down its iDEN network nationwide in June, 2013. *See* Plaintiff's SUMF at ¶¶12, 13. Rather, Almany contends that there is a material dispute as to whether Nextel's decision to shut down the iDEN network was the real catalyst behind its decision to abandon the Premises. Nextel offers Ms. Divornis's affidavit to justify the economic and technological decision, but Almany correctly points out that she was not directly involved in Nextel's decision to terminate the lease. *See* Divornis Deposition at 9:8–18.

Nevertheless, the economic and technological conditions in December, 2013 justify Nextel's decision to terminate the lease, irrespective of the Divornis affidavit. First, the terms of the lease grant Nextel substantial discretion to act in its economic best interests. Nextel's decision to abandon the premises is strong evidence that Nextel "determine[d] that the Premises are not appropriate for its operations for economic or technological reasons." Almany has not offered any evidence indicating that Nextel's decision to terminate the lease was motivated by non-economic or non-technological factors. *Cf. Publix Super Markets, Inc. v. Wilder Corp.*, 876 So. 2d 652, 655 (Fla. Dist. Ct. App. 2004) (presuming commercial reasonableness when exercising discretion in the performance of a contractual obligation).

Second, the Parties do not dispute that the Premises housed iDEN network equipment, or that Nextel shut down the iDEN network in June, 2013. For the purpose of summary judgment, it would be unreasonable for a jury to conclude that the Premises are still economically and technologically appropriate for Nextel's operations in view of these changes. Thus, Almany failed to raise a genuine dispute of material fact as to whether Nextel acted reasonably when it determined that the Premises were no longer economically viable for their intended purpose.

      B.    *Nextel Did Not "Waive" its Right to Terminate the Lease by Virtue of the Duty of Good Faith or Otherwise.*

The duty of good faith attaches to the performance of every contractual obligation under Florida law. *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. Dist. Ct. App. 1999). The duty is "designed to protect the contracting parties' reasonable expectations" by preventing either party from acting in "an arbitrary, fanciful and unreasonable" manner in the performance of the contract. *Id.*

Almany's strongest argument against summary judgment intertwines the doctrines of good faith and waiver, and can be summed up as follows: 1) it is not clear when Nextel decided that the Premises were no longer technologically or economically viable; 2) as part of the duty to perform its contractual obligations in good faith, Nextel had a duty to notify Almany as soon as Nextel decided that the Premises were no longer viable for its operations; 3) if it did not do so, then Nextel waived its right to terminate the contract for technological or economic reasons; therefore, 4) the issue of *when* Nextel knew that the premises were no longer economically viable precludes summary judgment for Nextel.

Almany's waiver argument fails for two reasons. First, Almany does not tie Nextel's duty of good faith to the performance of an express term of the Agreement. *See Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001) ("[A] claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached."). Instead, Almany asks the Court to use the duty of good faith to write a waiver provision into the Agreement.

Second, Almany's proposed waiver provision would operate in conflict with the express terms of the termination clause of the Agreement. As set forth in Section I, Nextel complied

6

with the express terms of the termination clause by notifying Almany that the Premises were no longer suitable for its operations. To preclude Nextel from terminating the Agreement based on the duty of good faith would "override the express terms of the agreement between the parties." *Insurance Concepts*, 785 So. 2d at 1234; *Cox*, 732 So. 2d at 1098 ("Of course, the implied obligation of good faith cannot be used to vary the express terms of a contract.").

Insofar as Nextel had a duty to execute the termination clause in good faith, there is no evidence that Nextel acted in such an "arbitrary, fanciful and unreasonable" manner as breach that duty. *See Cox*, 732 So. 2d at 1097. The Agreement allows Nextel to determine whether the Premises are economically and technologically viable, and the Court will afford Nextel substantial discretion in making that termination:

> [T]he reasonable commercial expectations protected by the covenant of good faith should cause the court to consider whether the party with sole discretion has abused its discretion in its assessment of costs and benefits. Unless no reasonable party in the position of the [defendant] would have made the same discretionary decision the [defendant] made, it seems unlikely that its decision would violate the covenant of good faith in this context.

*Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. Dist. Ct. App. 2000). Because changing technological and economic conditions permitted Nextel to terminate the Agreement, Nextel's decision to do so was "commercially reasonable and not arbitrary[,] and thus [did] not constitute a breach of good faith." *Publix Super Markets*, 876 So. 2d at 654–55.

## CONCLUSION

For the foregoing reasons, Nextel was entitled to terminate the lease upon thirty-days' written notice. A genuine dispute of material fact remains as to whether Nextel's first termination letter, dated December 30, 2013, put Almany on sufficient notice to allow Nextel to vacate the premises and cease payment at any time after January 29, 2014, or whether the thirty-

day termination period began to run on May 23, 2014, when Nextel sent a final termination notice to Almany.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of January, 2015January, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record